OSHKOSH PURE ICE COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*April 9—May. 5, 1942.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Charles H. Gorman* of Milwaukee, for the respondents.

MARTIN, J.   The appellant, Procknow, age thirty-three, was employed by the respondent, Oshkosh Pure Ice Company, as a truck driver.   While so employed on June 13, 1939, he got his right hand caught in an ice crusher and suffered lacerations of his arm and right hand.   As a result, he sustained some permanent disability of the palm and all fingers of the right hand.   The appellants claim that there was some permanent disability of the wrist.   Respondents contend that there is no evidence of any permanent disability of the wrist.   The commission found that as a result of the injury the applicant (Procknow) has sustained permanent disability equivalent to twenty-five per cent as compared with loss of the right hand at the wrist.   The commission further found:

"That for said temporary total disability the applicant is entitled to indemnity for twenty-three weeks and five days at the rate of $20.79 per week, or in the sum of $495.50, and that for said permanent disability of twenty-five per cent of the [right] hand he is entitled to indemnity for eighty-three and one-third weeks at said rate, of which forty-four and one-third weeks or $921.69 is accrued as of October 3, 1940,

leaving thirty-nine weeks or $810.81 to accrue thereafter. There is therefore payable as indemnity for disability, over and above the sum heretofore paid, the sum of $213.13, or with the additional allowance for disfigurement, $313.13."

Payment was so ordered.

Drs. C. A. Meilicke and J. W. Hogan made examinations of the injury sustained and submitted reports of their examinations at the request of the Industrial Commission examiner. Dr. Meilicke reported his estimate of disabilities as follows:

"Seventy-five per cent permanent loss of function on the right little finger, fifty per cent permanent loss of function on the ring finger, twenty-five per cent loss of function on the middle finger, seven and one-half per cent loss on the index finger. I have also allowed him ten per cent permanent loss on the palm of the hand due to awkwardness and deformity. The thumb is entirely normal in function. The chief source of disability lies in the injury to the metacarpal phalangeal articulations of the various digits with scar tissue, contractions, adhesions and shortening in the extensors tendons. These afore-mentioned things do not apply to his thumb. There is extensive scar tissue formation in the forearm and dorsum of his hand."

Dr. Meilicke's report is dated June 19, 1940. The report of Dr. Hogan, the attending physician, is dated February 8, 1940. As permanent impairment he found loss of function of the middle finger, twenty-five to thirty-five per cent; ring finger, fifty to seventy-five per cent; little finger, seventy-five to eighty-five per cent. His report makes no reference to any disability of the index finger. It is conceded that the thumb is entirely normal in function. Neither doctor reported any disability of the wrist. At the hearing before the examiner it was stipulated as follows:

"That as a result of his injury the applicant has suffered permanent disability as follows: Seventy-five per cent of the little finger at the proximal joint, fifty per cent of the ring finger at the proximal joint, twenty-five per cent of the middle

finger at the proximal joint, seven and one-half per cent of the index finger at the proximal joint, thumb O. K., and ten per cent of the balance of the hand up to the wrist."

Dr. Lynch, called as a witness by the respondent employer, testified that he examined the applicant on June 13, 1939, date on which he was injured, and again on June 14, 1940, date of first hearing before the Industrial Commission examiner. He testified that there was a permanent disability of the middle finger of twenty-five to thirty per cent as compared with a normal finger; fifty to seventy-five per cent loss of function of the ring finger; seventy-five to eighty-five per cent loss of function of the little finger; and five to ten per cent loss of function of the palmar portion of the hand; that by palmar portion of the hand is meant the palm; that the palm extends from the base of the fingers to the wrist. He found no disability of the index finger. He further testified that he found no functional disability of the wrist; that there is no loss of motion to any part of the wrist; that the scar on the forearm above the wrist does not tend to weaken that area; that none of the fingers was amputated.

The examiner asked Dr. Lynch to make an estimate of the disability as a whole, as compared with the loss of the hand at the wrist. The doctor answered:

"*A.* I would say a maximum of twenty-five [per cent].
"*Q.* And a minimum—? *A.* Of fifteen [per cent]."

The doctor was then asked:

"*Q.* In other words, Doctor, the injuries to this man's hand are confined in your opinion to the little finger, the middle finger, the ring finger and a small percentage of loss of the palm; and you have estimated that loss, or that loss to the palm; rather, is based upon weakness and scar tissue. Are we correct in that? *A.* That's right.
"*Q.* And outside of the injuries to the fingers, as described by you, and the loss of the palm, and the scarring that has been described by you, you find no other loss? *A.* No."

The doctor further testified that the elements of weakness and function are included in the disability of the fingers.

There is no evidence of any permanent disability to the wrist. The fingers and palm of the hand are partially permanently disabled. This being so, the recomputation by the commission ordered by the trial court cannot be made under either sec. 102.52, Stats. (the major permanent partial disability schedule) or under sec. 102.54 (the minor permanent partial disability schedule). The trial court directed a recomputation under the minor permanent partial disability schedule, sec. 102.54, under the decision of this court in *Western Condensing Co. v. Industrial Comm.* 234 Wis. 452, 291 N. W. 339. That case involved only the ring, little, and index fingers. Therefore, only the minor permanent partial disability schedule, under sec. 102.54 was applicable. In the instant case the injury to the palm of the hand, where the thumb remains, is a major permanent partial disability. The injury to the fingers comes under the schedule of minor permanent partial disability. Therefore the recomputation to be made by the commission should be made under sec. 102.555, Stats. 1939, which provides as follows:

*"Disability under both major and minor schedules; computation of benefits.* In cases involving disability, one or more of which is included in the schedule under section 102.52 and one or more in the schedule under sections 102.54 and 102.55, the number of weeks to be paid under each of such sections shall be computed separately under the provisions of the applicable section and added to each other. To such result there shall be added twenty per cent of the number of weeks to become payable under the provisions of sections 102.54 and 102.55. In all cases under this section indemnity shall be paid for the healing period in addition to indemnity provided for permanent disability, but only one healing period shall be allowed in any such case."

Whenever the statutes prescribe the basis of computation for an injury, the statutory basis must be applied. *Rhine-*

*lander Paper Co. v. Industrial Comm.* 216 Wis. 623, 258 N. W. 384; *Consumers Coal & Fuel Oil Co v. Industrial Comm.* 224 Wis. 363, 271 N. W. 641, 272 N. W. 463; *Western Condensing Co. v. Industrial Comm., supra.*

*By the Court.*—Judgment modified as indicated in the opinion and as so modified is affirmed.